tion voted upon shall be filed with a town clerk at least 20 days before the town meeting, and requires the town clerk to give 10 days' public notice of the proposed submission of such question. We think it manifest, therefore, that the town law was designed to prescribe a general rule uniform throughout the state with reference to expending money for the purchase of sites and the erection of town halls, and that there no longer remains any necessity for the existence of the special act of 1865. It is now a well-settled rule of statutory construction that a general statute covering the same subject-matter, and containing new provisions, and manifestly designed by the legislature to embrace the entire law upon the subject, operates to repeal by implication a former general or special statute, even though the two are not repugnant. People v. City of Brooklyn, 69 N. Y. 605; People v. Westchester Co. Sup'rs, 73 N. Y. 173; Heckmann v. Pinkney, 81 N. Y. 211; People v. Gold & Stock Tel. Co., 98 N. Y. 67; People v. Jaehne, 103 N. Y. 182, 193, 8 N. E. 374; In re New York Inst. for Instruction of Deaf and Dumb, 121 N. Y. 234, 24 N. E. 378; Cromwell v. MacLean, 123 N. Y. 474, 25 N. E. 932; McDermott v. Railroad Co., 85 Hun, 422, 32 N. Y. Supp. 884; Bramston v. Mayor, etc., 6 El. & Bl. 246; Bartlet v. King, 12 Mass. 537. It follows, therefore, that the contract upon which this suit is based was void, and the judgment appealed from should be affirmed, with costs. All concur.

---

### SMITH v. LEHIGH VAL. R. CO.

(Supreme Court, Appellate Division, Fourth Department. April 30, 1901.)

1. RAILROADS—CROSSING—COLLISION—SOUNDING WHISTLE—NEGLIGENCE.

Plaintiff's intestate and three daughters were sitting on the back seat of a closed carriage, and her husband and two sons occupied the front seat, as they approached a railroad crossing on a winter night, about midnight. The lady occupants of the carriage had wraps about their necks and heads, and the men had their overcoat collars turned up. All of the occupants were killed by a west-bound train except plaintiff and one son, both of whom testified that they looked and listened for the train before crossing, but heard no whistle or bell, and were driving on a walk until within 15 feet of the track, when the team started to trot. There was a strong wind blowing from the west, and the air was filled with sleet and dirt. The train crew testified that the whistle was sounded and that the bell was rung, but another witness testified that no signals were given, and the operator at the station testified that though the bell was rung the whistle was not sounded. *Held*, that a verdict in favor of plaintiff would not be disturbed on the ground that the evidence showed no negligence on the part of defendant.

2. SAME—CONTRIBUTORY NEGLIGENCE.

The occupants of the carriage were not guilty of contributory negligence as a matter of law.

3. SAME—DAMAGES—EXCESSIVENESS.

Where plaintiff's intestate, a woman 49 years of age and in good health, was killed through defendant's negligence, and she left a husband 48 years of age, and two sons 21 and 18, respectively, a verdict of $10,000 was excessive, and the judgment should be reversed, unless plaintiff stipulated to reduce it to $7,000.

Adams, P. J., and McLennan, JJ., dissenting.

Appeal from trial term, Ontario county.

Action by Porter D. Smith, as administrator of the goods, chattels, and mortgages of Anna Smith, deceased, against the Lehigh Valley Railroad Company. From a judgment in favor of plaintiff, and from an order denying a new trial, defendant appeals. Modified.

Plaintiff and son testified that they listened as they approached the crossing where the accident occurred, and heard no whistle or bell. T., who lived about 900 feet distant, was out of doors, and saw the train, but heard no bell or whistle. The operator at the station heard no whistle, but testified that the bell was ringing as the train passed the station, which was a short distance below the crossing. The crew of the colliding train testified that the signals were given.

Argued before ADAMS, P. J., and McLENNAN, SPRING, WILLIAMS, and LAUGHLIN, JJ.

Martin Carey, for appellant.
Thomas Raines, for respondent.

WILLIAMS, J. The judgment and order appealed from should be affirmed, with costs. The action was brought to recover damages resulting from the death of plaintiff's intestate, alleged to have been caused by the negligence of the defendant. The death resulted from a crossing accident at Farmington station, about 25 miles from Rochester, N. Y., in the open country, the highway crossing the railroad tracks nearly at right angles. The accident occurred about midnight, February 24, 1900. The carriage in which the intestate was riding, when struck by the defendant's train, was a covered two-seated one. The intestate and her three daughters were on the back seat, and her husband and two sons were on the front seat. One of the sons was driving the team. The intestate, her three daughters, and one son were killed in the accident. The husband and the son who was driving alone survived. The night was cold. It was not snowing, but the wind was strong, blowing nearly in the face of the driver of the team, and carrying with it snow and dirt. The train was a fast one, and traveling, at the time of the accident, about 60 miles an hour. In a clear day, a train, and in a still night the headlight of a train, could be seen when the train was a long way from the crossing, by a traveler along the highway, as he approached the crossing. There was the usual conflict in the evidence as to the ringing of the bell and the sounding of the whistle upon the engine as it approached the crossing; the plaintiff's evidence tending to show that the bell was not rung nor the whistle sounded, and the defendant's evidence that the bell was rung and the whistle sounded. The ground of negligence submitted to the jury was the failure to give these signals. We have considered the evidence carefully upon this subject, and conclude that, under well-settled principles of law, we should not disturb the finding of the jury that the defendant was negligent in the matter of signals, and that such negligence caused the death of the intestate.

The question of the absence of contributory negligence is one of more difficulty. We are often impressed, in examining these crossing accident cases, that the accident ought not to occur if the trav-

elers in the highway would exercise fairly the care in approaching crossings which the law requires. The court of appeals, however, in its decisions, leaves little for this court to do in reviewing this question in crossing cases. In the present case, these people approached this crossing more or less bundled about their heads and necks. They knew there was a train due to pass about the time, and they had not heard it go by. They allowed their team to walk until near the track, and in a position where they ought to have seen or heard the train which was approaching, and so near that in a few seconds it struck them. Evidently they did not see the train, because they started the team upon a trot to cross the track, and before they had fully crossed the train struck them. It is difficult to see how this accident could have occurred but for the want of proper care on the part of the father and the son who was driving. If the night had been still, no wind blowing, no snow or dirt in the air, they must have seen the headlight of the train, if they had looked, and heard the rumble of the train, if not the bell or whistle, if they had listened, in time to have kept off the tracks until the train had passed by. The law required them to bring their minds to consider the fact that a railroad crossing was there, and to exercise their faculties of seeing and hearing, with a view to learning whether a train was coming, and avoiding accident and collision at the crossing. If the night was dark, and the wind was blowing hard, carrying snow and dirt with it, so as to make it difficult to see or hear a train if one was approaching, the duty of care was so much the greater. These people did not stop their team, so that they could look and listen more carefully. If they had done so, it seems as though the accident would have been avoided. But we can hardly say, as a matter of law, that they should have stopped their team. It was a question for the jury, under all the circumstances surrounding these people, whether the exercise of ordinary care and prudence, which the law imposed upon them, required them to stop their team. The father and son were witnesses on the trial, and testified as to the care exercised by them, and as to the extent to which they exercised their senses of hearing and seeing, and they and others testified as to the kind of night and weather which was about them, and then the whole question as to the absence of contributory negligence was submitted to the jury, under a charge very carefully stating the principles of law that should govern the jury in deciding this issue, and the jury found in favor of the plaintiff. We think, under the decisions of the court of appeals, this court cannot disturb their conclusion.

The court in the body of the charge was not specific as to the rules relating to the deceased's negligence, but seemed to convey the idea that, if either the deceased or the son who was driving was negligent, the plaintiff could not recover. In answer to defendant's request at the close of the charge, the court told the jury distinctly that if the driver was negligent the plaintiff could not recover. The defendant could not complain of this instruction. It was very likely more favorable to the defendant than strictly it should have been. There were exceptions taken by the defendant to the charge itself

and to the disposition of requests made at its close. We think none of these exceptions were well taken. There were also some exceptions to the admission and rejection of evidence, but none of these present reversible error.

It seems to us that the verdict was excessive, and that the amount of damages should be reduced to $7,000. The deceased was 49 years old. She left a husband 48 years old, and two sons, 21 and 18 years of age, respectively, who are entitled to share the verdict. Under the circumstances, we feel impelled, by virtue of the power given us of supervising the verdicts of juries as to the amount of damages, to grant a new trial unless the plaintiff stipulates to reduce the verdict to $7,000.

We are therefore of opinion that the judgment and order appealed from should be reversed, and a new trial ordered, with costs to appellant to abide event, unless the plaintiff stipulates to reduce the verdict to $7,000, in which case the judgment is so modified, and as so modified be affirmed, without costs of this appeal to either party. All concur, except ADAMS, P. J., who does not concur in reduction of the verdict, and McLENNAN, J., who dissents.